**ESTATE OF Jane B. CEPPI, Deceased.
Peter B. CEPPI, Executor,
Plaintiff, Appellant,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Defendant, Appellee.**

No. 82–1453.

United States Court of Appeals,
First Circuit.

Argued Nov. 3, 1982.

Decided Jan. 11, 1983.

G. Quentin Anthony, Jr., with whom Sheffield & Harvey, Newport, R.I., was on brief, for plaintiff, appellant.

Nathanael R. Brayton, with whom John H. Clymer, and Hutchins & Wheeler, Boston, Mass., were on brief for plaintiff, appellant, amicus curiae.

Elaine F. Ferris, Albany, Cal., with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, and Robert T. Duffy, Washington, D.C., were on brief, for defendant, appellee.

Before BOWNES, BROWN * and BREYER, Circuit Judges.

* Of the Sixth Circuit, sitting by designation.

BAILEY BROWN, Senior Circuit Judge.

In this estate tax case, the decedent, shortly before death, made gifts each in excess of $3000 to eight individuals. It is without dispute that the gifts are generally includable in the decedent's gross estate. The issue is whether $3000 of each gift is to be excluded from the gross estate. The estate tax statute contains an exclusion provision applicable to gifts that are to be included in the gross estate, and this exclusion provision is tied to the $3000 annual exclusion provided by the gift tax. The estate contends that $3000 of each gift must be excluded, and this contention is referred to as the "subtraction out" theory. The Internal Revenue Service (IRS) contends that no part of the gifts can be excluded because each donee received more than $3000 from the donor-decedent in that year, and this contention is referred to as the "de minimis" theory.

The Tax Court, 78 T.C. 320, held that no part of the gifts may be excluded from the gross estate. We affirm but on a different basis than that of the Tax Court.

I

On January 5, 1978, the decedent, Jane B. Ceppi, made eight gifts to eight different relatives. Each gift consisted of 75 shares of Dome Mines stock and 20 shares of Texas Instrument stock. The value of each gift was $6,477.75 on the date the gift was made and $6,585.00 on the date of death. Ten days later, on January 15, 1978, Mrs. Ceppi died. The taxpayer does not dispute that these gifts are generally includable in the estate for estate tax purposes under § 2035(a).[1]

However, when the executor of the estate filed the federal estate tax return in October 1978, he claimed that $3000 of each gift was excludable under § 2035(b)(2). The estate's "subtraction out" interpretation of the 1976 version of § 2035(b)(2) is that it allows exclusion of the first $3000 of any gift in excess of $3000. The IRS disallowed the exclusion on the basis of its "de minimis" interpretation of § 2035(b)(2), under which no portion of gifts to a donee, which in a calendar year exceed a total of $3000, is excludable.

Later that same year, on November 6, 1978, the President approved the 1978 version of § 2035(b)(2), which clearly adopts the de minimis theory. Moreover, Congress provided that the 1978 version applies retroactively to all gifts made on or after January 1, 1977. Congress subsequently enacted the Technical Corrections Act of 1979, Pub.L. No. 96–222, 94 Stat. 194 (1980), which allows election of the subtraction out method for gifts made in 1977. *Id.* § 107(a)(2)(F). But it left intact the retroactive application of the 1978 de minimis theory to the gifts presently in issue, made on January 5, 1978.

After the deficiency of $7,296 was determined, the taxpayer filed a petition in the Tax Court to redetermine the deficiency. The taxpayer asserted two basic contentions. First, the 1976 version of § 2035(b)(2) adopted the subtraction out theory. Second, the retroactive application of the 1978 version, which without dispute requires application of the de minimis theory, violates the Due Process Clause of the Fifth Amendment. The Tax Court held that the 1976 version adopted the de minimis theory, and thus it did not address the constitutional issue. On appeal, the taxpayer presents both arguments, and it must succeed on both in order to prevail.

II

Section 2035(a) of the Internal Revenue Code provides generally that the value of gifts made within three years of death is includable in the estate for estate tax purposes. Subsection (b) enumerates the following exception to this general rule of inclusion:

> any gift excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax) determined without regard to section 2513(a).

§ 2035(b)(2).

The IRS contends that the term "any gift" contemplates the de minimis theory that no portion of total gifts to a donee in excess of $3000 in a calendar year is excludable. This is an all or nothing approach; the gifts are either less than $3000 and entirely excludable, or greater than $3000 and nothing is excludable. According to the IRS, "any gift" means the total of the gifts made to a donee in a calendar year. In this connection, the IRS contends that to give § 2035(b)(2) the effect sought by the taxpayer, it is necessary to read "any gift" to provide "any part of any gift." The IRS calls this the "de minimis" theory because, if applied, it would allow executors not to be concerned with gifts in small amounts made shortly before death and would at the

---

1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code, 26 U.S.C.

same time be administratively convenient to the IRS.

This view of the statutory language is unpersuasive. The term "any gift" does not necessarily require the IRS's all or nothing approach. More importantly, the 1976 version of § 2035(b)(2) specifically incorporates § 2503(b), which adopts the subtraction out theory of the gift tax.[2] Section 2035(b)(2)'s incorporation of § 2503(b) strongly suggests that it also incorporates § 2503(b)'s subtraction out theory. Thus it appears that statutory language supports the taxpayer.

Contemporaneous legislative history bolsters this conclusion. In a report prepared by the staff of the Joint Committee on Taxation shortly after enactment of the 1976 version, the subtraction out interpretation of § 2035(b)(2) was adopted. General Explanation of the Tax Reform Act of 1976, *reprinted in* 2 1976–3 C.B.1, 541. The IRS attempts to undercut this report by pointing out that it was prepared after enactment of the statute and the committee apparently did not formally adopt the report. But the government concedes that the report "is an extremely valuable contribution to the legislative history." Brief p. 22.[3]

The IRS, though, relies on subsequent legislative history. In the course of enacting the 1978 version and the Technical Corrections Act of 1979, Congress took the view that the 1976 version adopted the de minimis theory. For instance, during consideration of the Technical Corrections Act, the Senate Finance Committee stated:

> The legislative history [to the 1976 Act] was somewhat ambiguous and could be read to mean that this exception resulted in the inclusion of only the excess of the estate value of all gifts over the amount excludible under the gift tax annual exclusion.

> *     *     *     *     *     *

> Because of the ambiguity that existed prior to the committee's action on this issue in October 1977,[4] it is possible that gifts could have been made in excess of $3,000 based upon the assumption that only the excess of the value over $3,000 would be included in the gross estate as transfers within 3 years of death. Therefore, the committee believes that the "subtraction out" concept should be allowed with respect to gifts made before the adoption of the clarifying change by the Ways and Means Committee.

S.Rep. No. 498, 96th Cong., 2d Sess., 86–87, *reprinted in* 1980 U.S.Code Cong. & Ad. News 316, 395. Other language indicates that the amendment was a "clarification" of the 1976 version.

---

**2.** Section 2503(b) states:
EXCLUSIONS FROM GIFTS—In computing taxable gifts for the calendar quarter, in the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1971 and subsequent calendar years, $3,000 of such gifts to such person less the aggregate of the amounts of such gifts to such person during all preceding calendar quarters of the calendar year shall not, for purposes of subsection (a), be included in the total amount of gifts made during such quarter.

**3.** It is noteworthy that commentators have virtually universally adopted, either explicitly or implicitly, the subtraction out theory. *See, e.g.,* D. Link & L. Soderquist, Law of Federal Estate and Gift Taxation, Code Commentary, "Commentary" § 2035(b):1 (1978); S. Surrey, W. Warren, P. McDaniel & H. Gutman, Federal Wealth Transfer Taxation, Cases and Materials 257–258 (1977); Donaldson, *Inter Vivos Giving in Estate Planning Under the Tax Reform Act*

*of 1976,* 18 Wm. & Mary L.Rev. 539, 543–544 (1977); Hodges, *Current Strategies for Using Lifetime Gifts to Reduce Total Estate and Gift Taxes,* 47 J. Tax'n 266, 267 n. 3 (1977); Ingram, *The Estate, Gift, Generation-Skipping, and Related Income Tax Provisions of the Tax Reform Act of 1976 and Some Estate Planning Observations,* 1976 Utah L.Rev. 647, 746–747; Resnic, *Estate Planning Under the 1976 Tax Reform Act,* 62 Mass.L.Q. 89, 92 (1977); Zaritsky, *The Estate and Gift Tax Revisions of the Tax Reform Act of 1976,* 34 Wash. & Lee L.Rev. 353, 360 (1977); Note, *Section 2035: Taxation of Gifts Made Within Three Years of Death,* 19 B.C.L.Rev. 577, 589–590 (1978).

**4.** In October 1977, the House Ways and Means Committee approved the proposed Technical Corrections Act of 1977, which would have adopted the de minimis approach. This proposal was eventually incorporated in the 1978 Revenue Act.

■ Although some cases suggest that statements by a subsequent Congress are very valuable in statutory interpretation, the bulk of the case law indicates that such statements are dubious. The Supreme Court recently summarized the proper use of such statements:

> This Court has observed that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313 [80 S.Ct. 326, 331, 4 L.Ed.2d 334] (1960). This sound admonition has guided several of our recent decisions. *See, e.g., TVA v. Hill,* 437 U.S. 153, 189–193 [98 S.Ct. 2279, 2299–2301, 57 L.Ed.2d 117] (1978); *SEC v. Sloan,* 436 U.S. 103, 119–122 [98 S.Ct. 1702, 1712–1714, 56 L.Ed.2d 148] (1978). Yet we cannot fail to note Mr. Chief Justice Marshall's dictum that "[w]here the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived." *United States v. Fisher,* 2 Cranch 358, 386 [2 L.Ed. 304] (1805). In consequence, while arguments predicated upon subsequent congressional actions must be weighed with extreme care, they should not be rejected out of hand as a source that a court may consider in the search for legislative intent. *See, e.g., Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596 [100 S.Ct. 800, 814, 63 L.Ed.2d 36]; *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 380–381 [89 S.Ct. 1794, 1801, 23 L.Ed.2d 371] (1969); *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274–275 [94 S.Ct. 1757, 1761–1762, 40 L.Ed.2d 134] (1974).

*Andrus v. Shell Oil Co.,* 446 U.S. 657, 666 n. 8, 100 S.Ct. 1932, 1938 n. 8, 64 L.Ed.2d 593 (1980). *See also Annot.,* 56 L.Ed.2d 918, 919 (1979) (subsequent legislative history is not dispositive). In the present context, where the statutory language and contemporaneous legislative history indicate an intent to adopt the subtraction out theory, subsequent statements by Congress should carry relatively little weight.

■ We therefore conclude that the taxpayer is correct that the 1976 version of the statute allows the exclusion of the first $3000 of gifts in excess of that amount to a donee in a calendar year. This, however, is not the end of the matter. We now turn to the question of the applicability of the 1978 version of the statute.

### III

■ The IRS alternatively relies on the 1978 version of § 2035(b)(2), which by its terms is made retroactive and clearly adopts the de minimis theory.[5] The taxpayer, however, contends that retroactive application violates due process.

Each party cites numerous cases supporting its respective position. But the issue turns on the relationship between three cases, *United States v. Darusmont,* 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981) (per curiam); *Milliken v. United States,* 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931); and *Untermyer v. Anderson,* 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928).

In *Untermyer,* a gift had been made in 1924 while a bill that would tax it was pending before Congress. The statute, enacted a few days later in 1924, created a new tax on inter vivos gifts and applied retroactively. The Court held that retroactive application of this novel inter vivos gift tax violated due process.

In *Milliken,* the donor made gifts of corporate stock in December 1916, at which time an estate tax on gifts in contemplation of death was already in effect. In 1918 Congress increased the estate tax rate on such gifts and applied such rate to gifts made prior to its enactment. The donor died in 1920. Inclusion of the gifts in the taxable estate was not challenged; the sole issue was whether the higher rates could

---

**5.** The 1978 version provides an exclusion:

to any gift to a donee made during a calendar year if the decedent was not required by section 6019 to file any gift tax return for such year with respect to gifts to such donee.

By providing that the exclusion turns on whether the decedent is required to file a gift tax return, the 1978 version allows no exclusion once the gifts to a donee exceed $3000.

properly be applied. The Court held that retroactive application was constitutional.

The *Milliken* Court distinguished *Untermyer* on the ground of foreseeability of the tax. In *Untermyer,*

> the nature and amount of the tax burden imposed could not have been understood and foreseen by the taxpayer at the time of the particular voluntary act which was made the occasion of the tax.

*Milliken,* 283 U.S. at 21, 51 S.Ct. at 326. The foreseeability of the tax in *Milliken* was quite different:

> Not only was the decedent left in no uncertainty that the gift he was then making was subject to the provisions of the existing statute, but in view of its well understood purpose he should be regarded as taking his chances of any increase in the tax burden which might result from carrying out the established policy of taxation under which substitutes for testamentary gifts were classed and taxed with them.

283 U.S. at 23, 51 S.Ct. at 327. Generally, the *Milliken* Court held that the constitutionality of retroactivity involved there depended on the nature of the particular tax and upon the gift involved. *Id.* at 21–22, 51 S.Ct. at 326.

But *Milliken's* attempt to distinguish *Untermyer* is not completely convincing, and numerous lower courts have narrowly interpreted or questioned *Untermyer* in light of the *Milliken* decision. *Westwick v. Commissioner of Internal Revenue,* 636 F.2d 291, 292 (10th Cir.1980) (limiting *Untermyer* to "wholly new types of taxes"); *Buttke v. Commissioner of Internal Revenue,* 625 F.2d 202, 203 (8th Cir.1980), *cert. denied,* 450 U.S. 982, 101 S.Ct. 1517, 67 L.Ed.2d 817 (1981) (reads *Untermyer* to hold that "retroactive application of wholly new tax invalid"); *Shanahan v. United States,* 447 F.2d 1082, 1083 (10th Cir.1971) ("the force of *Untermyer* has been vitiated by *Milliken v. United States....*") (dictum); *Sidney v. Commissioner of Internal Revenue,* 273 F.2d 928, 932 (2d Cir.1960) ("If *Untermyer* remains authority at all, it is so only for the particular situation of a wholly new type of tax there under consideration"); *First National Bank in Dallas v. United States,* 420 F.2d 725, 730 n. 8 (Ct. of Claims), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1868, 26 L.Ed.2d 289 (1970) ("it is not entirely clear, in light of the above and the ever-increasing role of taxation in every area of activity, that the same result would obtain in these early cases [*Untermyer* and others] were they before the Court today."); *Rose v. Commissioner of Internal Revenue,* 55 T.C. 28, 30 (1970) ("The force of the *Untermyer* decision has been vitiated by a later estate tax case [*Milliken* ].") These cases indicate that *Milliken* significantly limits *Untermyer.* As Judge Friendly concluded in *Sidney v. Commissioner of Internal Revenue, supra, Untermyer* at best remains good law only for the proposition that a wholly new gift tax cannot be applied retroactively.

Under this reading of *Untermyer* and *Milliken,* the retroactive application of the 1978 version of § 2035(b)(2) is constitutional. In both *Milliken* and the present case, there was no dispute that the gifts were includable in the gross estate. Moreover, the increase in the estate tax base in this case is closely analogous to the increase in the estate tax rate in *Milliken.* The practical concern of the donor is the amount of taxes due, and an increase in the tax base has the identical effect as an increase in the tax rate—it increases the amount of taxes due. Thus, the present case falls squarely within *Milliken.*

In *Darusmont,* the taxpayer entered into a transaction (a sale of property) in 1976 which, at the time it was made, was not subject to the minimum income tax provisions. But later in 1976 Congress amended these provisions and provided for retroactive application, subjecting the transaction to the minimum income tax. In holding the retroactive application valid, the Court distinguished *Untermyer* on the ground that it is a gift tax case and the gift was made and completely vested "before the enactment of the taxing statute." 449 U.S. at 299, 101 S.Ct. at 553. In *Darusmont,* the Court assumed, *arguendo,* that reliance on existing

law and foreseeability of change is relevant to the issue of the constitutionality of retroactive application. In answer, the Court pointed out that the involved change in the law was a matter of public discussion and had been under consideration by Congress prior to the taxpayer's transaction. *Id.* Here the adoption of the de minimis theory that was enacted in November, 1978 had been under consideration and approved by the House Ways and Means Committee in October, 1977.[6]

### IV

We therefore conclude that, although the Tax Court was in error in concluding that the 1976 version of § 2035(b)(2) adopted the de minimis theory rather than the subtraction out theory, the Tax Court reached the correct result because the retroactive application of the 1978 version is constitutional. As modified, the Tax Court is AFFIRMED.

---

6. *See* H.R. 6715, 95th Cong., 1st Sess. § 3(f); H.R.Rep. No. 700, 95th Cong., 1st Sess. at 73– 74 (1977).