Maxine T. GRIMM,
Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.

No. 88–1046.

United States Court of Appeals,
Tenth Circuit.

Jan. 23, 1990.

John C. Rand, Alexandria, Va., for petitioner-appellant.

Thomas R. Lamons, U.S. Dept. of Justice, Tax Div. (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, and Robert S. Pomerance, U.S. Dept. of Justice, Tax Div., with him on the brief), Washington, D.C., for respondent-appellee.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and THOMPSON,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Maxine T. Grimm ("Grimm") appeals from a decision of the United States Tax Court sustaining income tax deficiencies against her for the years 1978, 1979, and 1981. The Tax Court held that a portion of community property income from the sale of stock was properly attributable to Grimm for the years such income was received by the executors of her husband's estate even though no payment had been made to Grimm personally. *Grimm v. Commissioner*, 89 T.C. 747 (1987). We affirm.

## BACKGROUND

Throughout her marriage Grimm, an American citizen, resided with her husband in the Philippines. On May 28, 1976, Grimm and her husband redeemed stock which they held in the Everett Steamship Corporation ("Everett"). In exchange for the stock, they were to receive five annual installments of $984,092.31 each beginning on or before June 30, 1976. Grimm's husband died on November 27, 1977, before the final three installments were paid.

After her husband's death, Grimm moved from the Philippines to Utah, where a Utah state court admitted her husband's will to probate. Grimm and her brother were appointed as personal representatives of the estate. While the estate was still being probated, the final three installments for the Everett stock were paid to Grimm and her brother as personal representatives of the estate.

Grimm did not report any portion of the three final payments from Everett on her income tax returns for the years those payments were received. She apparently took the position that she was not taxable on the installment payments at the time she received them in her capacity as executor of her husband's estate, but only when and if the money was distributed to her personally. Grimm now contends that un-der Philippine law, community assets arising out of her marriage do not belong to her immediately at the time of her husband's death. Rather, pending administration of her husband's estate and subject to satisfaction of debts, she alleges that she has only a mere expectancy in the remainder, if any, of community assets over community debts.

The Tax Court rejected Grimm's arguments, ruling that she must report her share of community income for the years in which the payments were made by Everett. The court interpreted Philippine law as conferring upon her a "vested right to one-half interest in the community property, including the Everett payments due after decedent's death." *Grimm*, 89 T.C. at 754.

## DISCUSSION

■ We review the Tax Court's decision "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury...." 26 U.S.C. § 7482(a). The court's interpretation of Philippine law is subject to de novo review, as with a determination of domestic law. Fed.R.Civ.P. 44.1 ("The court's determination [of the law of a foreign country] shall be treated as a ruling on a question of law.").

■ Grimm is responsible for paying income tax on her share of the Everett stock payments when she became vested with ownership of such payments or portions thereof and they are actually or constructively received by her. *See Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930); *Helvering v. Horst*, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); *Ross v. Commissioner*, 169 F.2d 483 (1st Cir.1948) (doctrine of constructive receipt treats as taxable to cash basis taxpayer income not yet reduced to possession but nevertheless controlled by the taxpayer); Treas.Reg. § 1.451–2(a) ("Income although not actually reduced to a taxpayer's possession is constructively received by him in the tax-

* Honorable Ralph G. Thompson, Chief Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

able year during which it is credited to his account, set apart for him, or otherwise made available....") . Because the Everett payments represent income from property accrued during Grimm's marriage and residence in the Philippines, the ownership of the deferred payments, and the timing of Grimm's ownership interest therein is a question of Philippine property law.

■ Under Philippine law, each spouse in a marriage "partnership" is vested with an equal interest in the community assets and income. The Family Code of the Philippines provides:

"Under the regime of conjugal partnership of gains, the husband and wife place in a common fund the proceeds, products, fruits and income from their separate properties and those acquired by either or both spouses through their efforts or by chance, and, upon dissolution of the marriage or of the partnership, the net gains or benefits obtained by either or both spouses shall be divided equally between them, unless otherwise agreed in the marriage settlements."

Philippine Family Code Art. 106, 83 Official Gazette, Republic of the Philippines No. 42, p. 5147 (October 19, 1987), Appellant's Letter of Supp. Authority, August 29, 1989 at 5147.

Both parties agree that under the applicable Philippine law, Grimm and her deceased husband's estate are both entitled to equal shares of the deferred payments resulting from the sale of the Everett stock. Grimm's only contention is that she has no ownership interest in her share of the payments, and has not constructively received them until *after* the estate is administered and her remainder in the community property is actually paid to her.

The payment to Grimm of her interest in the community property and community in-come must await liquidation of the community property or "conjugal partnership." This procedure takes place concurrently with the administration of her deceased husband's estate. "Upon the termination of the marriage by death, the conjugal partnership property shall be liquidated in the same proceeding for the settlement of the estate of the deceased." Phil. Family Code Art. 130, 83 Official Gazette at 5151. During the administration of the estate, prior to the final liquidation of the community property, Grimm is understandably restricted from using the community property assets as she chooses. In this regard, we see no significant difference between this procedure under Philippine law and typical community property liquidation procedures elsewhere. Grimm has not identified any mechanism under Philippine law whereby her vested rights in this property could be defeated or forfeited except by the ordinary servicing of community debts for which Grimm is equally responsible with her deceased husband. We conclude, therefore, that under Philippine law, Grimm is immediately vested with ownership interest in her share of community property and community income.[1] *Accord United States v. Stonehill,* 702 F.2d 1288, 1297 (9th Cir.1983) ("Under Philippine law, income from the husband's businesses was conjugal property in which the wife had an immediate vested half interest."), *cert denied,* 465 U.S. 1079, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984).

The question of a surviving spouse's tax liability for his or her share of community property income pending administration of the deceased spouse's estate has been addressed in several decisions. The Ninth Circuit has taken a fairly consistent view that where local property law vests ownership rights in the survivor, taxation follows that ownership. Thus the court in *Bishop*

---

**1.** Both parties stipulated that the Philippine marital property law is "analogous" to the community property provisions of the state of Washington. Grimm correctly cautions against concluding that the two systems are identical. We do not conclude, and we need not decide that the law of the Philippines is identical in every respect to that of Washington. The rights of a surviving spouse in his or her share of community property are sufficiently similar under the two systems that decisions relating to the tax liability of a surviving spouse in Washington and other community property states are relevant and persuasive. Grimm has failed to identify any difference between the Philippines and such community property states that would warrant different treatment in this case.

*v. Commissioner*, 152 F.2d 389, 390 (9th Cir.1945), stated: "Being the owner of a one-half interest in the community property, [the surviving spouse] owned one-half of the income therefrom. Since ownership is the test of taxation, [the wife's] half of the [income] was taxable to her, not to the estate." In a subsequent case, the Ninth Circuit summarized:

"[O]n the death of one member of the marital community the surviving spouse *continues to own* a one-half share of the community property. Such share is not a part of the decedent's estate. For practical reasons the survivor's share is subject to administration along with that of the decedent, but, to borrow the words of Judge Holmes of the Fifth Circuit, the indefeasible title of the survivor does not pass into an eclipse pending the settlement of the decedent's estate. His interest is the same as it was prior to his wife's death, and he, not the estate, is the proper taxable person with respect to such interest."

*United States v. Merrill*, 211 F.2d 297, 302 (9th Cir.1954) (citing, *e.g.*, *Henderson's Estate v. Commissioner*, 155 F.2d 310, 312 (5th Cir.1946)); *see also United States v. Stonehill*, 702 F.2d 1288, 1297 (9th Cir. 1983) ("The taxpayers are taxable ... on their half of the community property.").

The only other circuit that has extensively addressed this issue is the Fifth Circuit. As the Tax Court recognized, after some initial confusion the Fifth Circuit's decisions now clearly agree with the position of the Ninth Circuit that the surviving spouse in a community property regime continues to own and is taxable for his or her share of community income pending estate administration. *See, e.g., Sneed v. Commissioner*, 220 F.2d 313 (5th Cir.1955).

▆▆▆ Grimm cites authority for the proposition that estate executors are not deemed to personally receive income or property from the estate they administer until they actually pay such amounts to themselves in their personal capacity. That proposition of law, whether correct or not, is entirely irrelevant here. Grimm's share of the community property accumu-

lated during her marriage and her share of the income from such property is her own. It does not pass to her as part of her husband's estate. As personal representatives of her husband's estate she and her brother hold *estate* assets as fiduciaries of the estate. Thus she would not be deemed to have personally received, by virtue of her fiduciary capacity, any interest in her deceased husband's share of the community until the estate actually pays her the amount designated for her in her husband's will or by operation of the appropriate laws of inheritance. Nevertheless, in their concomitant capacity as liquidators of the conjugal partnership, Grimm and her brother receive Grimm's portion of the community assets and community income as fiduciaries for Grimm herself, not as fiduciaries of the estate; the estate never has title to Grimm's interest in these assets. *See United States v. Merrill*, 211 F.2d 297, 302 (9th Cir.1954) (surviving spouse's "interest is the same as it was prior to [other spouse's] death, and [survivor], not the estate, is the proper taxable person with respect to such interest."); M. Ferguson, J. Feeland & R. Stephens, *Federal Income Taxation of Estates and Beneficiaries* 22, 24 (1970) ("In these circumstances the executor is functioning qua executor with respect to the decedent but only as a custodial agent with respect to the survivor.").

The administrative restrictions placed on Grimm's use and disposition of her share of community property during the liquidation procedure do not defeat her ownership interest in that property and do not effectively negate her receipt of the same. In *Sneed* the Fifth Circuit assessed liability to the surviving spouse for income tax in each of the years that the community income was collected by the executors rather than some later year when distribution was actually made to the widow herself. Judge Rives, concurring with the court's opinion, reasoned:

"In every real sense the widow's ownership acquired during the marriage continues uninterruptedly, and the executor has title to that half only of the community property belonging to his decedent. It does not follow from the fact that the

executor has control and possession of the community and its income during administration that the income is not taxable to the widow. It is said that the widow may have received no funds with which to pay the tax. I apprehend that under state law it would be the executor's fiduciary duty to provide the widow with such necessary funds."

220 F.2d at 316 (Rives, J., concurring).

The payments from the sale of Everett stock, once received by Grimm and her brother, are *immediately* available for the purpose of satisfying community debts for which Grimm is personally responsible along with her husband's estate. Thus the benefits of these payments immediately inure to Grimm. Grimm's contention that no tax should be assessed to her until *after* the estate has been fully administered would permit her continued enjoyment of the benefit from these payments without the corresponding tax burden. Such a result would be both illogical and undesirable. As the indefeasibly vested owner of one-half of this income, Grimm is taxable on the Everett payments upon their collection pending total liquidation of community property. The judgment of the Tax Court is AFFIRMED.