T.C. Memo. 1998-154


UNITED STATES TAX COURT


ESTATE OF MARTIN J. MACHAT, DECEASED, AVRIL GIACOBBI AND
ERIC R. SKLAR, EXECUTORS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21573-96.                    Filed April 27, 1998.


<u>Richard S. Kestenbaum</u> and <u>Bernard S. Mark</u>, for petitioner.

<u>Janet F. Appel</u> and <u>Donald A. Glassel</u>, for respondent.


MEMORANDUM OPINION

LARO, <u>Judge</u>:  The Estate of Martin J. Machat (the estate) petitioned the Court to redetermine respondent's determination of deficiencies in the amounts of $26,383 and $277,309 in its 1988 and 1989 Federal income tax, respectively, and additions thereto under section 6651(a) in the respective amounts of $6,596 and $69,327.

Following the estate's concession as to the 1988 and 1989 additions to tax, the remaining issue is whether the fund transfers from M.J. Machat Management Corp. Pension Plan and Trust (the Plan and Trust) to a temporary administrator were includable in the estate's gross income upon receipt by the temporary administrator. We hold they were. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

### Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference. When the petition was filed, Avril Giacobbi (Ms. Giacobbi) resided in London, England, and Eric R. Sklar (Mr. Sklar) resided in Wantaugh, New York.

Martin J. Machat (decedent) died of lung cancer on March 19, 1988, at the age of 67. Decedent's last will and testament (will), dated March 4, 1988, was propounded by Ms. Giacobbi, who was decedent's companion at the time of his death. After decedent's death, his estranged wife Roslyn Machat (Ms. Machat) brought suit to set aside a separation agreement entered into between Ms. Machat and decedent on July 3, 1984. Litigation was also brought by Ms. Machat and decedent's and Ms. Machat's children to deny probate of the will. Since probate of

decedent's will was contested, on July 8, 1988, the New York County Surrogate's Court, pursuant to N.Y. Surr. Ct. Proc. Act section 902 (McKinney 1994), appointed Harvey E. Corn (Mr. Corn) to serve as the estate's temporary administrator.

Decedent's assets included a $1,082,292 interest in the Plan and Trust, which had been established by M.J. Machat Management Corp., effective August 28, 1978. The Plan and Trust was a qualified plan under section 401(a), and decedent was the sole participant and the sole trustee at all times before his death. The estate has not located a form designating a beneficiary of decedent's interest in the Plan and Trust, and thus decedent's interest therein is to pass under the terms of the Plan and Trust document. These terms are:

> In the event a Participant fails to designate a Beneficiary in writing, or the Beneficiary and the contingent Beneficiary predecease the Participant, the Participant's surviving spouse shall be deemed the Beneficiary. If there is no surviving spouse, the benefits shall be paid to the Participant's surviving issue per stirpes. If there are no surviving issue, the benefits shall be paid pursuant to the intestacy laws of the Participant's domicile.

During decedent's life, the assets of the Plan and Trust were held by Bankers Trust Co. of New York (custodian). Shortly after his appointment, Mr. Corn requested that the custodian transfer the assets of the Plan and Trust to him. The custodian refused to transfer the assets until it received M.J. Machat Management Corp.'s corporate resolution authorizing such an

action.  Mr. Corn then asked the judge presiding over the will contest to direct the custodian to turn over the funds to Mr. Corn, and the judge granted Mr. Corn's request on December 22, 1988.  The surrogate's court judge's order reads as follows:

> I direct the Financial Institution to turn over the funds held in the name of the Employer to the fiduciary.  The fact that I am directing that the funds to be turned over to the fiduciary is not a determination of who shall ultimately be entitled to the funds.  We are putting them there in order that they be placed in some interest-bearing accounts and so forth, and in order to enable the fiduciary to make payments.

In response thereto, the custodian made the following distributions to Mr. Corn:  $91,902 on December 28, 1988; and $485,000, $20,000, and $485,390 on January 12, March 30, and April 20, 1989, respectively.

Mr. Corn, in his capacity as the estate's temporary administrator and fiduciary, filed the estate's 1988 and 1989 Fiduciary Income Tax Returns, Forms 1041, in March 1991.[1]  None of the pension funds were included as gross income on either of these returns.  As to both years, the estate attached a disclosure statement acknowledging the temporary administrator's receipt of the funds but asserting that the receipt of the funds was merely a change in custodial agent and not a taxable distribution.  The 1988 and 1989 tax returns did report interest income earned on the funds.  Mr. Corn also filed the estate's

---

[1]  The estate is a cash basis taxpayer.

1990 and 1991 tax returns, which reported income derived from the pension funds only to the extent that the assets formerly held in the Plan and Trust were used for the estate's expenses ($295,447 and $367,460 in 1990 and 1991, respectively).  The pension funds were used to pay the estate's tax liabilities and other administration expenses including attorney's fees, temporary administrator's fees, apartment rental and maintenance fees, real estate taxes, and storage fees.  Some of the expenses paid from the pension funds were made with the surrogate's court approval, while others were made without the surrogate's court approval.

In December 1994, after 5 days of trial, the New York County Surrogate's Court's Preminger issued an order directing that decedent's will be admitted to probate on January 5, 1995.  On March 30, 1995, Ms. Giacobbi filed papers in the probate court of Greenwich, Connecticut, seeking to have decedent's will admitted to probate.  The will was accepted by the probate court, and Ms. Giacobbi and Mr. Sklar were appointed coexecutors on or about March 30, 1995.  The pension funds, along with decedent's other assets, are the subject of continuing litigation.

In separate notices of deficiency issued to each of the coexecutors, dated August 14, 1996, respondent determined that the 1988 and 1989 pension distributions were includable in the estate's income when received, and not when expended, by the temporary administrator.

## Discussion

We must decide whether the 1988 and 1989 distributions from the Plan and Trust to the temporary administrator were taxable to the estate in the years of receipt. Respondent's determinations are presumed correct, and the burden is on the estate to prove the determinations wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Generally, income is includable in a taxpayer's gross income in the year of receipt under section 451(a).[2] However, the Congress has provided more specialized rules in the area of employee plans, and where applicable, these rules govern instead of the more general accounting rules identified under section 451(a). Section 402(a)(1) provides in part:

> Except as provided in paragraph (4), the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed under section 72 (relating to annuities) * * *

The parties appear to be in agreement that the Plan and Trust meets the requirements of section 401(a) and that there is a trust forming a part of the Plan that is exempt from tax under

---

[2] Sec. 451(a) provides in part: "The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period."

section 501(a).  That being so, distributions from the trust are governed by section 402(a)(1).

The estate argues that the transfers of funds to the temporary administrator did not constitute distributions includable in the estate's gross income in either 1988 or 1989. The estate raises numerous arguments in support thereof.  First, according to the estate, the funds were not distributed within the meaning of section 402(a)(1) but instead merely transferred from one custodial arrangement to another.  The estate argues that section 402(a)(1) is inapplicable because there were no distributions to a "distributee" within the meaning of section 402(a)(1).  Additionally, the estate claims that there were no "distributions" because it was not in either actual or constructive receipt of the funds.[3]  Citing New York law, the estate claims that a temporary administrator is merely the alter

---

[3] Under sec. 1.451-1(a), Income Tax Regs., "Under the cash receipts and disbursements method of accounting, such an amount is includible in gross income when actually or constructively received."  Sec. 1.451-2(a), Income Tax Regs., defines constructive receipt as follows:

Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

ego of the surrogate's court and that the transfers of funds from the custodian to the temporary administrator were in essence transfers to the surrogate's court. Therefore, the estate argues that there were no distributions to the estate, and it was in neither actual nor constructive receipt of the funds. Second, even if there were deemed distributions to the estate, under the claim of right and constructive receipt doctrines, the estate contends that it did not receive the funds because the funds were subject to substantial limitations or restrictions under New York law.[4] According to the estate, under New York law, a temporary administrator's powers are limited to acts done for the preservation of an estate pending resolution of litigation. Hence, substantial limitations or restrictions are imposed on the use of funds received by the temporary administrator.

Respondent makes several arguments for including the distributions in the estate's 1988 and 1989 gross income. First, respondent argues that the distributions were taxable to the estate in the years of receipt because the funds were no longer held by a qualified trust and there were distributions to a "distributee" within the meaning of section 402(a)(1). Second,

---

[4] Under the "claim of right" doctrine, if a taxpayer receives income under a claim of right and without restrictions, the income is taxable in the year received, whether the taxpayer sees fit to enjoy it, even though the taxpayer is not entitled to retain the money, and even though the taxpayer may later be adjudged liable to restore its equivalent. See North Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932).

respondent argues that the distribution of decedent's pension was income in respect of a decedent under section 691(a)(1)(A) and thereby taxable to the estate, which acquired the right to receive the amount. Third, respondent argues that the estate was in actual or constructive receipt of the income, and under the claim of right doctrine, it must include the distributions in the years of receipt. Respondent contends that the estate's use of the pension funds, via the temporary administrator's use of the funds, was not subject to substantial restrictions for tax purposes.

We must first resolve whether the distributions fall within section 402(a)(1) and are thereby covered by its rule. The estate argues that the temporary administrator is not a "distributee" within the meaning of section 402(a)(1) and therefore that the delivery of pension funds to the temporary administrator does not constitute a taxable event. Citing Darby v. Commissioner, 97 T.C. 51, 58 (1991), the estate contends that the term "distributee" is limited to employee/plan participants or their beneficiaries; and because no beneficiary has been determined, no distributee received the pension funds. Respondent argues that the estate is the "distributee" of the funds transferred from the custodian to the temporary administrator Mr. Corn.

Neither the Code nor the regulations define the term "distributee" as used in section 402(a)(1). The Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829, and its antialienation provisions, along with pertinent case law, supply significant insight into the correct interpretation of the term "distributee". ERISA was enacted to establish "a comprehensive federal scheme for the protection of pension plan participants and their beneficiaries." American Tel. & Tel. Co. v. Merry, 592 F.2d 118, 120 (2d Cir. 1979). It was intended to ensure that American workers "may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society." S. Rept. 93-127, at 13 (1974), 1974-3 C.B. (Supp.) 1, 13. Promoting this goal, the Congress enacted protective legislation including the antialienation rule. ERISA section 1021(a), 88 Stat. 104, added section 401(a)(13), which requires tax-qualified plans to provide "that benefits provided under the plan may not be assigned or alienated." This prohibition generally precludes the plan from recognizing the rights of creditors with respect to a participant's interest under the plan.

In the years following the enactment of ERISA, litigation raised the issues of whether the antialienation provisions

applied to family support obligations and State community property laws. Subsequent amendments addressed these issues. Sections 402(a)(9) and 414(p)(8), as enacted by the Retirement Equity Act of 1984 (REA '84), Pub. L. 98-397, sec. 204(c)(1) and (b), 98 Stat. 1448, 1445, provide that (1) if a qualified domestic relations order (QDRO) designates the spouse, former spouse, child, or other dependent of the plan participant as a person who is to receive the benefits payable with respect to the participant, then that payee is an "alternate payee" and (2) the alternate payee is to be treated as the distributee for purposes of determining taxability of the payments. In this situation, the alternate payee, and not the plan participant, is taxed on the distributions. The Tax Reform Act of 1986 (TRA '86), Pub. L. 99-514, sec. 1898(c)(1)(A), 100 Stat. 2951, modified section 402(a)(9), as enacted by REA '84, to provide that an alternate payee would be the distributee only if the alternate payee were the spouse or former spouse of the plan participant. In summary, section 402(a)(9) provides an exception to the general rule, and where all statutory requirements are fulfilled, the alternate payee is deemed the distributee. Where a QDRO fails to meet the specific requirements of section 414(p), section 402(a)(9) is not

applicable and the general rules of section 402(a)(1) and (13) apply.[5]  See Smith v. Commissioner, T.C. Memo. 1996-292.

Against this backdrop, several cases have addressed the meaning of "distributee".  In Darby v. Commissioner, supra, which dealt with a 1983 plan distribution, we held that a distribution from a qualified profit-sharing plan pursuant to a provision in a State court divorce decree was taxable in its entirety to the husband-employee even though he paid a portion of the distribution to his former wife in accordance with the decree. On the basis of "the statutory matrix which the Congress understood and modified in the Retirement Equity Act of 1984", id. at 59, the Court concluded that "a distributee of a distribution under a plan ordinarily is the participant or beneficiary who, under the plan, is entitled to receive the distribution."  Id. at 58 (emphasis added).  The Court stated the following:

> A conclusion that "distributee" means "participant
> (or beneficiary) under the plan" appears to be
> consistent with Congress' understanding when it enacted
> REA '84 and TRA '86.  We do not have to decide in the
> instant case whether that is the definitive or only
> meaning of "distributee". * * *

Id. at 66.  The Court also found that the term "distributee" is not synonymous with either "recipient" or "owner", and that the

---

[5]  Sec. 402(a)(9) is now sec. 402(e)(1)(A).

- 13 -

person who receives the distribution is not automatically the distributee.  Id. at 64-66.

Interpreting Darby, the Court in Powell v. Commissioner, 101 T.C. 489, 498 (1993), stated that "an owner was not necessarily a distributee and [that Darby] specifically observed that its statement that a 'distributee' had to be a participant or beneficiary was not an exclusive definition of that word." Applying the law as modified by REA '84, the Court found that the plan participant's former spouse was the "distributee" and thereby taxable on her share of the pension benefits.  Id.

As illustrated by the aforementioned cases, most, if not all, of the case law interpreting the term "distributee" dealt with whether or not a spouse or former spouse with a legal interest in a participant's pension benefits is a distributee under section 402(a)(1) and thereby responsible for paying the taxes on receipt of a distribution.  A finding in each case merely shifted tax liability between an employee/participant and his or her spouse or former spouse.  It did not insulate all parties from tax liability.

The estate, relying on this case law, urges the Court to adopt a novel interpretation which in effect would permit funds to be distributed by a qualified plan without identifying any distributee.  We decline to accept this interpretation.  We conclude that the estate is a "distributee" within the meaning of

section 402(a)(1).  Mr. Corn, acting as the estate's temporary administrator, took possession of the pension funds, and these funds were immediately available for and were, in part, utilized for the estate's benefit.  The estate was therefore an interim beneficiary of these funds.  See Darby v. Commissioner, 97 T.C. at 66-67 (distributee generally means plan participant or beneficiary).

Finding that the estate is a "distributee", we now address whether the estate received a distribution within the meaning of section 402(a)(1).  The estate argues that there were no distributions in 1988 or 1989 because it was not in either actual or constructive receipt of the funds.  Additionally, the estate argues that the claim of right and constructive receipt doctrines preclude a finding that the estate received income during the years in issue.  Respondent argues that the estate was in actual or constructive receipt of income since the distributions were received by the temporary administrator on behalf of and for the benefit of the estate.  Respondent contends that the temporary administrator was the estate's agent and therefore his receipt of the funds is equivalent to the estate's receipt of the funds.  According to respondent, the temporary administrator's agent status is illustrated by his duty to file the estate's Federal tax returns and pay estate administration expenses.

Section 402(a)(1), as amended by section 314(c)(1) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172, 286, provides that a distributee is taxed on benefits under a qualified retirement plan in the tax year in which those benefits are "actually distributed".  Prior to the 1981 amendment, section 402(a)(1) provided that amounts held in an employees' trust were taxable "when actually paid, distributed, or when made available to the distributee."[6]  The phrase "when made available" was deleted by ERTA section 314(c)(1) in order to alleviate a significant administrative burden for qualified plans which had undertaken to protect employees from taxation under section 402(a)(1) by developing a complex array of restrictions on an employee's right to make withdrawals from a qualified plan. Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 214 (J. Comm. Print 1981); see Clayton v. United States, 33 Fed. Cl. 628, 636 (1995) ("prior

---

[6] Sec. 1.402(a)-1(a)(5), Income Tax Regs., which has not been amended to reflect the 1981 change, states:  "If pension or annuity payments or other benefits are paid or made available to the beneficiary of a deceased employee or a deceased retired employee by a trust described in section 401(a) which is exempt under section 501(a), such amounts are taxable in accordance with the rules of section 402(a) and this section."  Sec. 1.402(a)-1(a)(6)(i), Income Tax Regs., which has also not been amended to reflect the 1981 change, states:  "The total distributions payable are includible in the gross income of the distributee within one taxable year if they are made available to such distributee and the distributee fails to make a timely election under section 72(h) to receive an annuity in lieu of such total distributions."

to the amendment, whenever the employee had an unrestricted right to withdraw his plan benefits, the benefits would be taxable to the employee in that year even though the employee had not actually reduced the benefits to his possession"), affd. without published opinion 91 F.3d 170 (Fed. Cir. 1996).

Further insight into the meaning of the "actually distributed" requirement of section 402(a)(1) is provided by H. Conf. Rept. 97-215, at 239-240 (1981), 1981-2 C.B. 481, 503:

> Under the House Bill, benefits under a qualified plan (including deductible employee contributions and earnings thereon) are taxed only when paid to the employee or a beneficiary and are not taxed if merely made available. Of course, as under present law, if benefits are paid with respect to an employee to a creditor of the employee, a child of the employee, etc., the benefits paid would be treated as if paid to the employee.

Given the aforementioned history of section 402(a)(1), we conclude that the term "actually distributed" includes the situation herein where funds were paid out of the tax-exempt trust. In amending section 402(a)(1), the Congress intended to address situations where an employee could be taxed on pension funds before their distribution. The change was not directed at situations where the funds were disbursed from the qualified trust. This conclusion is supported by the Congress' intent to treat payments to an employee's creditors, etc., as if the payments were made directly to the employee. In this case, when the plan disbursed these funds to the temporary administrator, a

distribution occurred.  The funds, upon receipt by the temporary administrator, were no longer held by a qualified trust, and there was an actual distribution under section 402(a)(1).

Finally, we address the estate's argument that substantial restrictions and limitations were placed on the temporary administrator's use of the distributed funds and therefore, that under the claim of right and constructive receipt doctrines, the estate did not receive income in the years of the distributions. Underlying the estate's argument is its position that the temporary administrator is not an agent of the estate.  See Maryland Cas. Co. v. United States, 251 U.S. 342, 346-347 (1920); Wilson v. Commissioner, 12 B.T.A. 403, 405 (1928) ("It is a well established principle of law that receipt by an agent is receipt by the principal.").

Before a 1993 change in New York law which broadened the powers of a temporary administrator, temporary administrators were empowered to perform the following functions:  Take personal property into possession and preserve it; pay taxes; publish notice for creditors; and any other actions the court ordered. See N.Y. Surr. Ct. Proc. Act sec. 903 (McKinney 1994); see also In re Barrett's Estate, 82 N.Y.S.2d 137, 142 (Surr. Ct. 1948) (a temporary administrator's "powers are conferred and regulated by statute"); In re Gross' Estate, 31 N.Y.S.2d 610, 611 (Surr. Ct. 1941) (a temporary administrator is a receiver of the court and,

in a literal sense, an alter ego of the court); <u>In re Watson's</u> <u>Estate</u>, 205 N.Y.S. 380, 381 (Surr. Ct.) (a temporary administrator represents not only the interest of those taking under the will, but, in the case of rejection, the heirs at law and next of kin), affd. 205 N.Y.S. 382 (App. Div. 1924).

While we recognize that New York law explicitly prescribes and limits a temporary administrator's authority, given the nature of a temporary administrator's duties and, in this case, the actions taken by him, the benefits of the temporary administrator's receipt of the pension funds immediately inured to the estate. The pension funds were used to pay the estate's tax liabilities and other administration expenses including attorney's fees, temporary administrator's fees, apartment rental and maintenance fees, real estate taxes, and storage fees. The economic benefit to the estate is not diminished by the fact that, among other things, the temporary administrator lacked the power to distribute any residual funds to the ultimate beneficiary. Cf. <u>Sneed v. Commissioner</u>, 220 F.2d 313 (5th Cir. 1955) (court imposed liability on the surviving spouse for income tax in each of the years that the community income was collected by the executor rather than some later year when distribution was actually made to the widow herself), affg. 17 T.C. 1344 (1952); see also <u>Sproull v. Commissioner</u>, 16 T.C. 244 (1951), affd. per curiam 194 F.2d 541 (6th Cir. 1952); <u>Moore v. Commissioner</u>,

45 B.T.A. 1073 (1941). Moreover, we think that the estate's position results in an impermissible deferral of tax on the distributions. Under the estate's approach, so long as the temporary administrator held the distributions, there was no tax to pay on the principal, neither by the estate nor by anyone else. But these funds, upon receipt by him, were immediately available to satisfy the estate's debts and expenses. No restriction was placed on the estate's use and enjoyment of these funds that would warrant a postponement of the tax. Cf. Grimm v. Commissioner, 894 F.2d 1165, 1169 (10th Cir. 1990), affg. 89 T.C. 747 (1987).[7] We therefore find that, for Federal tax purposes, substantial restrictions and/or limitations were not placed on the use of the distributed funds.

For the aforementioned reasons, we sustain respondent's determination and hold that the 1988 and 1989 fund transfers from the Plan and Trust to the temporary administrator were includable

---

[7] We also note that the estate's failure to report the distributions as income in the years of receipt by the temporary administrator is inconsistent with its treatment of income generated from the distributions and its report of a substantial portion of the distributions as income in the years the funds were used to satisfy the estate's liabilities. In 1988 and 1989, the estate filed tax returns reporting interest income derived from the pension funds. In 1990 and 1991, the estate reported the funds themselves as income to the extent that they were used to pay the estate's expenses. Consistency, however misplaced, dictates that the estate would not report any of the distributions or income derived thereon as income until there was a subsequent distribution to the ultimate beneficiary.

in the estate's gross income upon receipt by the temporary administrator.

We have considered all other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiencies in tax, and in accordance with the estate's concession for respondent as to the additions to tax under section 6651(a)</u>.