T.C. Summary Opinion 2010-135


UNITED STATES TAX COURT


DONALD A. HACKENBERG, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19377-08S.            Filed September 9, 2010.


Donald A. Hackenberg, pro se.[1]

Vladislav M. Rozenzhak, for respondent.


CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[2]  Pursuant to section

_____

[1]Timothy L. Taggart, specially recognized, appeared for petitioner on brief.

[2]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the year in issue.  Rule references are to the Tax Court Rules of

(continued...)

7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 2, 2008, respondent determined a $7,395 deficiency in and a $1,290 section 6662(a) accuracy-related penalty with respect to petitioner's 2006 Federal income tax.

The issue for decision is whether a distribution, or any portion of it, from a retirement plan maintained by petitioner's former employer, is includable in petitioner's income.

## Background

All of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in California.

Petitioner and Linda Hackenberg (Ms. Hackenberg) married in March 1984. Apparently, they resided in California at all times relevant here. They separated in 2005. Their marriage was dissolved pursuant to a judgment of dissolution dated December 29, 2006, issued by the Superior Court of California (the judgment). The judgment includes and incorporates a document titled "Judgment -- Addendum to Judgment" (the addendum) that, among other things, encompasses the division of marital property.

[2](...continued)
Practice and Procedure.

The addendum was signed and dated by Ms. Hackenberg on July 10, 2006, and by petitioner on July 23, 2006.

Petitioner was formerly employed by Orange County, California (county), and as a county employee participated in the Orange County Employees Retirement System (OCERS). According to the addendum, petitioner and Ms. Hackenberg "were married for approximately one-half of the time" that petitioner was a county employee.

As best we can determine from the record, petitioner began receiving distributions from OCERS at some point before 2006. OCERS's records show that it made and reported a $27,346.68 distribution to petitioner during 2006 (the distribution). Starting on January 1, 2006, and ending on December 1, 2006, the distribution was made in monthly installments deposited directly into a joint checking account maintained by petitioner and Ms. Hackenberg. Although maintained as a joint account, the account was used exclusively for her benefit.

According to the addendum, as of the date it was signed petitioner was "currently paying to" Ms. Hackenberg "the entirety of the monthly amount he receives" from OCERS. The addendum memorializes the stipulation between petitioner and Ms. Hackenberg "that it is their intention that * * * [he] shall continue to fully pay to * * * [her] the monthly amount * * *

[he] receives from * * * [OCERS] through and including the month of July, 2007".  After that date, the addendum provides that

> contingent upon * * * [petitioner's] complete performance of the above-stated terms * * *, [Ms. Hackenberg] shall irrevocably relinquish any and all legal or equitable interests in * * * [petitioner's] pension with * * *[OCERS], and said pension shall thereafter be * * * [his] sole and separate property.

The income reported on petitioner's timely filed 2006 Federal income tax return does not include the distribution, and the distribution is not otherwise disclosed on that return.  In the above-referenced notice of deficiency respondent determined that the distribution is includable in petitioner's income and adjusted petitioner's income accordingly.  Other adjustments made in the notice of deficiency have been agreed to and need not be discussed.  The distribution is disclosed, but not included in the income shown on an amended return submitted to respondent after the notice of deficiency was issued.

## Discussion

The parties agree with the fundamental principle that a distribution from a retirement account is includable in the income of the distributee.  See secs. 61(a)(11), 72. Nevertheless, according to petitioner, the distribution is not includable in his income because:  (1) Pursuant to California community property law, the addendum transmuted his interest in the OCERS retirement plan into Ms. Hackenberg's; and (2) regardless of any transmutation, the distribution was made

pursuant to a qualified domestic relations order.  Respondent disagrees on both points, and so do we.

## I. Petitioner's Interest in the OCERS Retirement Plan

In general, property interests are determined by State law. Zinsmeister v. Commissioner, T.C. Memo. 2000-364 (citing Hoover v. Commissioner, 102 F.3d 842, 845 (6th Cir. 1996), affg. T.C. Memo. 1995-183), affd. 21 Fed. Appx. 529 (8th Cir. 2001). Petitioner's interest in the OCERS retirement plan is determined according to the laws of the State of California.

Property acquired by spouses while domiciled in California is community property.  Cal. Fam. Code sec. 760 (West 2004).  On the other hand, property owned before marriage or property earned or accumulated while spouses live separate and apart from each other is the separate property of the spouse who so owned, earned, or accumulated it.  Id. secs. 770(a), 771.  A spouse's entitlement to a share of the community property arises at the time that the property is acquired.  Eatinger v. Commissioner, T.C. Memo. 1990-310.  Under California community property law, each spouse has a one-half ownership interest in the community estate, including income earned by both spouses during their marriage.  Cal. Fam. Code sec. 2550 (West 2004).

Although petitioner and Ms. Hackenberg were apparently living separate and apart at the time the distribution was made, their respective interests in the OCERS retirement plan were

acquired before their separation. They were married for approximately one-half of the time that benefits under the OCERS retirement plan accrued. Therefore, one-half of the OCERS retirement plan is community property and the other one-half is petitioner's separate property. See id. secs. 770(a), 771. It follows that absent a valid transmutation agreement between them, at the time of their divorce or separation petitioner was entitled to receive three-quarters of any benefits attributable to the OCERS retirement plan, including income generated by the plan, and Ms. Hackenberg would be entitled to receive the remaining one-fourth.

II. Whether Petitioner's Interest in OCERS Has Been Transmuted

Spouses subject to California's community property laws may by agreement transmute property as follows: (a) Community property into separate property of either spouse; (b) separate property of either spouse into community property; and (c) separate property of one spouse into separate property of the other spouse. Id. sec. 850. A transmutation agreement "'is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.'" Benson v. Benson, 116 P.3d 1152, 1156 (Cal. 2005) (quoting Cal. Fam. Code sec. 852(a) (West 2004)). In order to effect a transmutation, the writing must "expressly [state] that the characterization or

ownership of the property is being changed."  Bolton v. MacDonald, 794 P.2d 911, 918 (Cal. 1990) (express declaration creating a joint tenancy must declare interest being transferred "to be a joint tenancy").

Although the arrangement contemplated by the addendum was already in effect, the addendum was not in existence before July 1, 2006.  Consequently, the addendum could not be considered a transmutation agreement between petitioner and Ms. Hackenberg with respect to any portion of the distribution made before August 1, 2006.  As to the portion of the distribution made on or after that date, we find that the addendum is not an express, written declaration of petitioner's intent to transmute his interest in the OCERS retirement plan, or any portion of it, into Ms. Hackenberg's separate property.  The addendum obligates petitioner to pay the amount he receives from OCERS to Ms. Hackenberg for a specified period, but it does not contemplate that any portion of his interest in the OCERS retirement plan was to become Ms. Hackenberg's separate property.  To the contrary, the addendum states that after July 2007, if petitioner made all of the agreed payments, any rights or benefits attributable to the OCERS retirement plan would be petitioner's "sole and separate property", thereby effectively transmuting what was otherwise Ms. Hackenberg's community property interest in the OCERS retirement plan into petitioner's separate property.

The addendum does not transmute petitioner's interest in the OCERS retirement plan into Ms. Hackenberg's.  In general, income attributable to income-generating property is includable in the income of the taxpayer who owns the property.  Simply put, the addendum, which memorializes petitioner's agreement to transfer to Ms. Hackenberg only certain of the income generated by the OCERS retirement plan, is, for Federal income tax purposes, nothing more than an impermissible assignment of income.  See Lucas v. Earl, 281 U.S. 111, 114 (1930).

III. Whether the Judgment is a Qualified Domestic Relations Order

The parties agree that the OCERS retirement plan is a qualified retirement plan described in sections 72 and 401. Generally, under section 402(a), a distribution from a qualified retirement plan is taxable to the distributee.  Neither the Internal Revenue Code nor the regulations defines the term "distributee".  The term, however, is generally construed to mean the participant or beneficiary who under the plan is entitled to receive the distribution.  Darby v. Commissioner, 97 T.C. 51, 58 (1991); Estate of Machat v. Commissioner, T.C. Memo. 1998-154. When the term is construed in that manner, petitioner is the "distributee" because under the OCERS retirement plan, he is the participant or beneficiary who is entitled to receive distributions from that plan.

There is an exception to this general rule in section 402(e)(1)(A), which provides: "an alternate payee who is the spouse or former spouse of the participant shall be treated as the distributee of any distribution or payment made to the alternate payee under a qualified domestic relations order (as defined in section 414(p))."

The term "domestic relations order" (DRO) means any judgment, decree, or order that relates to the provision of alimony payments or marital property rights to a spouse or former spouse of a plan participant and that is made pursuant to a State domestic relations law, specifically including a community property law. Sec. 414(p)(1)(B). The judgment dissolved petitioner's marriage to Ms. Hackenberg and provides for the division of the marital property between them pursuant to California law; therefore it qualifies as a DRO. See id.

According to petitioner, the judgment further fits within the definition of a qualified domestic relations order (QDRO). Petitioner recognizes that the judgment was not in place at the time the distribution was made but argues that it should be given retroactive effect.

A DRO qualifies as a QDRO only if it: (1) Creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant

under a plan; (2) clearly specifies certain facts, including the names and addresses of the participant and the alternate payee, the amount to be paid to the alternate payee, and the number of payments or period to which the order applies; and (3) does not alter the amount or form of the plan benefits. Sec. 414(p)(1)-(3). In addition, the DRO must be presented to the plan administrator, who must determine the "qualified status" of the DRO. Sec. 414(p)(6); Rodoni v. Commissioner, 105 T.C. 29, 35 (1995); Karem v. Commissioner, 100 T.C. 521, 526 (1993). Finally, under section 402(e)(1)(A), an alternate payee is treated as the distributee of a distribution from a qualifying plan only if the distribution is made directly to the alternate payee under a QDRO. Amarasinghe v. Commissioner, T.C. Memo. 2007-333, affd. 282 Fed. Appx. 228 (4th Cir. 2008); see also Burton v. Commissioner, T.C. Memo. 1997-20 (noting that in part because the distribution was made to the plan participant and not his former spouse, it was not "made by the plan administrator to an alternate payee in response" to a decree).

The judgment was not presented to the OCERS retirement plan administrator for a determination of whether it was a QDRO. See sec. 414(p)(6). In addition, the distribution from the OCERS retirement plan was not made directly to Ms. Hackenberg as an alternate payee. See sec. 402(e)(1)(A); see also Amarasinghe v. Commissioner, supra. Consequently, the judgment does not fit

within the definition of a QDRO, and Ms. Hackenberg is not treated as an alternate payee with respect to petitioner's share of the distribution.[3]  Accordingly, for Federal income tax purposes the judgment does not alter petitioner's status as the distributee of his share (three-quarters) of the distribution.

Because the addendum did not transmute petitioner's interest in the OCERS retirement plan into Ms. Hackenberg's, and because the judgment is not a QDRO, three-quarters of the distribution is includable in petitioner's 2006 income.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[3]Because we find that the judgment is not a QDRO, we need not address petitioner's argument that the judgment should be given retroactive effect.